HAMITER, Justice.
Willie R. Taliaferro instituted this suit to obtain a judgment decreeing the interdiction of his mother, Mrs. Eliza T. Taliaferro. The petition charged (among other things) that the defendant is 82 years of' age, unable to read, write, sign her name, or count money; that she has converted all of her real property to cash, having sold it to her daughter, Mrs. Bess Taliaferro Long, and has withdrawn her life savings from the bank, all without any apparent need or reason; and that, because of mental and physical infirmities, she is incapable of caring for either her person or property.
Answering, the defendant admitted having converted her real property to cash and having withdrawn her life savings from the bank. 'However, she averred that the money received is intact in a bank box to which she has the key. She further averred that she is fully capable of attending to herself and her affairs.
After a trial of the merits of the cause the district judge pronounced the interdiction demanded by plaintiff. As stated in assigned written reasons for the judgment he concluded “ * * * that the defendant falls within the provisions of the article 422 and should be interdicted, not for insanity but for other infirmity, as prescribed in article 422 R.C.C. * * * ” (The pertinent part of this article of the LSA-Civil Code recites: “Not only lunatics and idiots are liable to be interdicted, but likewise all persons who, owing to any infirmity, are incapable of taking care of their persons and administering their estates.”)
On this appeal the defendant complains: “The word ‘infirmity’ as used in Revised Civil Code Article 422, is a mental infirmity having relation to and affecting the capacity of an individual to administer his estate and care for his person, * * *. The Trial Court erred in pronouncing a sentence of interdiction in this case where there is absolutely no testimony as to a mental infirmity in the defendant, that renders her incapable of handling her estate and taking care of her person.”
In answer to these complaints counsel for appellee state: “We make no issue of appellant’s assertion that'only mental infirm *397 ities subject a person to interdiction, for we feel there is an abundance of evidence that conclusively shows Mrs. Taliaferro was mentally incompetent to understand the purport of the transactions that divested her of all her property and placed it in the hands of an unworthy and scheming daugh- ”
Accordingly, it appears that the only question to be resolved on this appeal is one of fact, namely, whether the evidence introduced discloses that the defendant is mentally incompetent to care for her person and property.
From the record we find that the defendant, a widow who is unable to read or write and was 83 years of age when this suit was instituted on October 24, 195S, has for several years resided with her daughter, Mrs. Bess T. Long. Prior to moving to her daughter’s home, and subsequent to her husband’s death, she lived with her son, Willie R. Taliaferro, the plaintiff herein. Either at the time of the removal or thereafter the mother and son became estranged, but the reason for the estrangement is not shown.
Within a month previous to the commencement of this proceeding, and which seem to have provoked it, the defendant performed certain acts relative to her property that met with plaintiff’s disapproval. Thus, she executed three separate deeds transferring to her daughter (Mrs. Bess T. Long), for a recited total cash consideration of $5,700, all of the real estate that she owned, including her interest in two tracts containing producing oil wells from which she was being paid royalties. Also, she sold 3,116 shares of $1 par value Olla State Bank stock, receiving therefor $1.50 per share or a total of $4,674; and she withdrew $1,300 from a savings account at the Citizens Progressive Bank of Columbia. Further, she attempted to withdraw savings of $3,000 on deposit in the Olla State Bank, but a six months’ notice requirement prevented the withdrawal. Subsequently, all of the mentioned funds received were delivered to Mrs. Long who placed them in a bank safety deposit box (the name and address of the bank are not disclosed) and gave- the key thereto to the defendant.
With respect to those transactions counsel for plaintiff argue: “The irrational acts in withdrawing money in savings accounts to place in a safety deposit box, disposing of her oil producing properties for a mere pittance, selling bank stock in her brother’s bank without need for the money, placing all her money and property in the hands of an unconscionable and unscrupulous daughter, and her inability to read, write or count money clearly establishes defendant’s mental incompetence to manage her estate.”
This argument does not take into consideration the testimony of Mr. A. D. Flowers, a practicing attorney at the Louisiana Bar who had represented the defendant since 1927. According to him the defendant, accompanied by Mrs. Long, came to *399 his office and stated that “she wanted to turn over her property to Bess.” After informing her of the limitations respecting donations inter vivos and mortis causa he advised that “the only way Bess could get legal ownership of that property was to be by a sale”, and that the consideration therefor must actually be paid. Later, the defendant returned to his office and said that she wanted to sell the property to Bess. Following a discussion of the proposed transactions he prepared the necessary deeds, counted the cash considerations paid by Mrs. Long to the defendant, and officiated as Notary in the execution of the instruments.
Mr. Flowers also stated that the defendant knew exactly what she was doing in signing the deeds and fully understood the nature and import of the transactions. On this point the following testimony is pertinent :
“Q. Now, Mr. Flowers, regardless of the consideration Mrs. Taliaferro wanted Bess to get this property. Is that correct? A. Very definitely she said so.
“Q. And she further definitely said that she didn’t want her son
“Mr. Sanders: Object to the leading question.
“Q. All right. What did she say with reference to her son? A. She said she didn’t want Bill to have a penny that she had.
“Q. Was she too much concerned as to what consideration was set forth in the deed if the property actually went to and vested in Bess Long? A. She told me that she didn’t care whether she got a dollar for it or not but I told her that I didn’t think she could give away that much property.
“Q. Did you or did you not, Mr. Flowers, advise Mrs. Taliaferro that the cash sale form was the best means to your opinion to carry into effect what she wanted to be done? A. That’s right. I followed what I thought was the best plan for her to carry out what she had told me that she wanted.
“Q. Was there any question in' your mind that Mrs. Taliaferro fully and completely understood the entire—
"Mr. Sanders: Objection to the leading question.
“A. I know she understood it. I want to add a little to my other testimony. I have known Mrs. Taliaferro for a number of years, I’ve talked to her repeatedly on business matters, I talked this matter over with her in just as much of a business manner as I would talk with my own brother or sister and I know that her mind was as clear on this transaction as it has ever been on any matter that I ever talked to her about. I realize that she can’t read and write and that she’s 84 years old but that does not make a person insane.”
*401 When consideration is given to the testimony of Mr. Flowers the circumstances referred to by appellee’s counsel do not clearly establish mental incompetence of defendant to manage her estate. At the most they indicate that she, by her acts, was merely attempting to prefer her daughter over her son.
Whether the sales of her real estate and bank stock were illegal, because of the asserted influence on defendant by her daughter and a failure to receive sufficient consideration for the property, is a question determinable in an appropriate suit attacking them, not in this interdiction proceeding. Incidentally, recited in one of the deeds to the real property, in addition to a cash consideration of $4,000, was the “ * * * consideration that the Vendee has furnished to Vendor a home and board for the past four years and binds and obligates herself to furnish to Vendor a home, board and necessary medical expenses for the remaining portion of the life of the Vendor.” Too, the defendant received more for her bank stock than any other person had been able to obtain for his.
Counsel for appellee further argue that from the testimony of defendant alone, particularly her incoherent and one word responses to questions and her displayed lack of knowledge of the proven transactions, the district court was justified in concluding that she was incapable mentally of managing her affairs. The record discloses that the defendant was the first witness called at the trial and then under cross-examination by plaintiff’s counsel. Notwithstanding that she was examined at length, and plainly was under a great emotional strain (she was cognizant of the nature of the proceedings), it appears that she fully understood the questions propounded and gave responsive answers to them with the exception of a few which she evaded, believing apparently that they might have had some bearing on whether she was favoring her daughter over the son. When this evasion is considered in connection with her attorney’s advice that a preferring of the daughter could be done only to a limited extent the reason therefor is obvious; and it seems to point up her thorough understanding of the transactions.
It is true that once the defendant testified that she had not sold a particular piece of property which in fact she had transferred to her daughter. But this misstatement occurred early in the taking of her testimony, at a time when she was clearly very nervous. Later, while still under cross-examination, she specifically stated that she did not own the property— “that belongs to my daughter.”
Particularly noticeable from the testimony of the defendant is that she knew approximately what she had been receiving in monthly revenue; she was aware that it had varied from month to month; and she remembered the amount of her bank de *403 posits. Moreover, some' of her responses to questions respecting conversations that took place at various times (when withdrawing funds from the bank and consulting with her attorney) were corroborated by testimony of other witnesses.
With further reference to the testimony of the defendant, certain language of this court in Delord v. Lozes, 144 La. 377, 80 So. 595, 596, seems appropriate. Therein, in reversing a district court finding that a 76 year old woman was mentally deficient, we said: “ * * * She was called to the witness stand by counsel for the other defendants and cross-examined at length, to test her mental faculties; and her answers, though not always accurate, were generally and in most part correct. Every answer was responsive and appropriate. We think that the relevancy of the answer to each question propounded — not an inaccuracy or error here and there — is the best test of the mental condition of the witness. The evidence shows that Miss Lozes is 76 years of age and of very unassuming disposition, having spent the better part of her life in her home, taking little or no interest in what went on outside, and looking mainly to her sister, the plaintiff here, for the management of her financial affairs. It does' not appear that she is not capable of taking care of her 'personal affairs. Jjí i{< M
In seeking the interdiction of his mother the plaintiff herein did not testify. He relied on the transactions and circumstances above discussed and on the testimony of Messrs. Lacy !Nunn and Louis Tullos (a brother of defendant), both bankers. These witnesses expressed opinions that defendant was incapable of managing her business affairs, principally because she was uneducated, could not count large sums of money, and had no idea about values. Neither testified as to any mental derangement on her part.
The defendant, on the other hand, introduced the testimony of several witnesses (in addition to that of Mr. A. D. Flowers, the attorney) to disprove the charge that she was mentally incompetent. Persons who had often visited in her home stated that she appeared normal in her dealings and conversations with them, not mentally infirm.
Physicians called as witnesses by the defendant, and who had examined her subsequent to the commencement of this proceeding, were Drs. E. L. Carroll and John F. Mosely. The former had treated her many years and had made his examination for the purpose of this litigation pursuant to an order of court. Both doctors found that she was suffering from arteriosclerosis, often experienced by people as they advance in years, and a myocardial heart condition which was revealed only by an electrocardiogram reading. The latter condition would require that she limit her physical activities and avoid serious emotional stress.
*405 With reference to her mental condition Dr. Carroll stated “ * * * On talking to Mrs. Taliaferro (and also had my nurses to observe her) I concluded that she was mentally all right for a person in her senile age. I am under the impression that she cannot read or write. * * * I thought that for a person of that age that she was alert.”
And Dr. Mosely testified: “I checked her physically and also was aware of what was happening on the other end as far as the mental condition was concerned. * * * I found she was well oriented and that her mental faculties were all right.”
Our conclusion as to the issue of fact presented by this appeal is, therefore, that the evidence introduced fails to disclose the defendant to be mentally incompetent to care for her person and property.
For the reasons assigned the judgment of the district court is reversed and set aside, and this suit is dismissed. All costs are to be paid by appellee.